---

## THE FRI.

### (District Court, E. D. New York. August 2, 1905.)

SHIPPING—LOSS OF CARGO THROUGH MASTER'S NEGLIGENCE—LIABILITY OF SHIP.

Where cargo was lost by the stranding of a steamship on a well-known and dangerous reef, which, with the controlling currents surrounding it, was shown by the master's charts and book of instructions, the burden rests upon the owners, in order to absolve themselves from liability under section 3 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), on the ground that they exercised due diligence to make the vessel in all respects seaworthy and "properly manned," to show that the master was not only competent, but that he was habitually diligent in attending to his duties, or that they had the right to so believe after the exercise of due diligence to ascertain his qualifications. There is no presumption that they exercised the required diligence, and, in the absence of any evidence on the subject, the vessel is liable for the consequences of the master's negligence or incompetency.

In Admiralty. Suit to recover for loss of cargo by stranding.

Butler, Notman & Mynderse, for claimants.
R. & A. C. Weil, for libelants.

THOMAS, District Judge. The libel was filed to recover for the loss of cargo by the stranding of the Norwegian steamship Fri, bound from Cartagena, United States of Colombia, to Cienfuegos, Cuba. The Fri left Cartagena September 24th, took observations

at 8 o'clock a. m. and at noon on September 25th, but not later, as the sky was obscured after 3 o'clock of that day. At about 12:30 o'clock a. m., September 26th, the ship ran onto the Bajo Nuevo Reef, in the Caribbean Sea, at a point some 10 miles westerly of the easterly end thereof. The vessel was 30 miles westerly of her proper course. The reef is about 14 miles in length, and is a well-known and perilous obstruction to navigation, and the reef and the westerly currents in its vicinity are shown and described on charts and publications to which the master of the Fri had access. The accident happened through the master's negligent failure to ascertain that he would meet controlling westerly currents in the vicinity of the reef, and to navigate accordingly. The information he could have obtained from the book of instructions which he had, and which he is understood to have consulted. But it is inferable that he did not study the instructions diligently, but proceeded upon the theory that the easterly currents first met after leaving Cartagena were continuing and dominating influences; although he claims to have been moved somewhat in fixing his course by an apprehension that westerly currents might become factors. In any case, he was not sufficiently careful to learn what conditions would beset his clearing a dangerous reef. This negligence caused the disaster. But had he the technical capacity to take the vessel safely over the course provided he had not been careless in the use of his faculties? The variety of his long experience at sea indicates sufficient skill to conduct the steamer during a four-days voyage without collision with the reef. He was careless in gathering facts, or in failing to use facts that were laid plainly before him in a printed book. Capacity to perform a duty includes not only technical skill, but also proper disposition to use the same. A competent captain of a ship sailing on waters unknown to him must not only be adept in the art of navigation, and capable of making practical use of his acquirements, but he must also be a man who studies diligently to learn what conditions beset his progress, and thereupon make use of the information obtained. That the master did not learn what he should have known, and what he needed to know, to pass the reef safely, is clear. The world abounds in men who have the skill to fulfill a given task, who fail by reason of faults that prevent accomplishment. Hence, in view of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), invoked by claimants, the evidence should show what manner of man the master was, or at least what qualities had the owners a right to ascribe to him, using the diligence to ascertain them demanded by the act. The Harter act releases the owners from liability provided they exercised "due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied." If the act is applicable, and the owners did in fact use proper diligence in the selection of the master, they are acquitted. But the observance of such diligence is a condition precedent to their release. Therefore they must show performance of the condition. There is no latitude, no equity. The evidence reveals that the master had been a sailor since 1878, taking part in many and

varied voyages, and that for the last 15 years he had been master of sailing vessels, except for somewhat more than a year prior to the accident, during which time he was master of steam vessels in the employment of the claimants. But was he a man of good habits, fidelity, caution, diligence in the performance of his duties, and in learning what was necessary for their performance? Had he discharged his duties satisfactorily and faithfully during his employment by the claimants? By his negligence he caused the shipwreck. The owners claim that they were duly diligent in his selection. If so, they should show in what their diligence consisted. It is not a case for presumptions. They are burdened with the necessity of adducing affirmative proof, and the burden is not unreasonable, considering that they seek to escape liability from damage caused by the wrongful act of their servant. The Harter act, as claimants allege, is incorporated in the bill of lading, so indorsed by the agents of the parties as to bind them by its terms. If this be true, it is unimportant whether the correspondence between the agents of the parties effected the adoption of the Munson charter, for, if it was adopted, the stipulation exempting from liability for injury arising from "errors of navigation, and all other dangers of the seas, rivers and navigation of whatever nature and kind soever, even when occasioned by negligence, default, or error in judgment of the pilot, master or mariners," as well as the provision in the bill of lading that "the live stock shall be at the risk of the owner, shipper or consignee thereof, and the steamship is in no way responsible for any accident or any mortality which may occur during the voyage, or after landing at destination from whatever cause arising," must be harmonized with the Harter act. All the stipulations read together do not relieve the owners from exercising primarily "due diligence to make the said vessel in all respects seaworthy and properly manned, equipped and supplied."

In the absence of proof that such "due diligence" was observed by the claimants in the selection of the master, the libelants must have a decree.